**Junior Herman GORDON, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–05–00327–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 30, 2006.

---

1. *See* Tex.R.App. P. 34.6(c).

Gordon W. White, Missouri City, for appellants.

Eric Kugler, Houston, for appellees.

Panel consists of Justices HUDSON, FOWLER, and SEYMORE.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant, Junior Herman Gordon, was indicted for the felony offense of aggravated robbery. A jury convicted him and then sentenced him to eighteen years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant challenges his conviction in five issues: (1) the evidence was factually insufficient to sustain his conviction; (2) the evidence was legally insufficient to sustain his conviction; (3) the trial court's comments to the jury during voir dire were so prejudicial that they deprived him of a fair trial; (4) the trial court reversibly erred by admitting a firearm into evidence over his objection; and (5) his trial counsel was ineffective in not requesting an instruction on the lesser-included offense of robbery. We affirm.

### Factual and Procedural Background

On June 14, 2004, sometime after 12:30 a.m., Randy Robertson was driving his Cadillac when a car suddenly pulled out of a side street in front of his car. Three black males, not wearing any masks or disguises of any kind, exited the car, drew guns, pointed them at Robertson, and demanded he exit his car. Robertson put his car in park, which automatically unlocked the doors, and then was forcibly removed. Robertson was wearing $70,000 to $80,000 in jewelry—diamond necklaces, a platinum Rolex watch, and diamond cuff links. The robbers took all of the jewelry, Robertson's car, and $800 to $1400 cash that he had on his person and in his car. Because the robbers had not made any attempt to conceal their faces, Robertson feared they would kill him.

After the robbers drove away, Robertson called 911 and asked to be patched through to OnStar. The dispatcher sent an officer to Robertson's location and put him in touch with OnStar. After confirming with police that Robertson's car had been stolen, the OnStar operator gave police the location of the Cadillac, which was approximately eighteen miles away from the site of the robbery. Robertson described the robbers to the police as having a medium complexion; he also testified that the one in charge was giving orders to "Black" and "Junior."

As police approached the home where they ultimately found the Cadillac, they saw appellant peeking around a white Pontiac parked in front of the home. He was looking down the street, and then ducking behind the Pontiac again. After police drove past the home—not having yet located the Cadillac as it was not immediately visible from the street—appellant fled on foot. Police did not try to apprehend appellant at that time, as they had no suspicion he was involved in the aggravated robbery. Police located the car hidden in weeds in front of the home a little after 1:00 a.m. On top of the Pontiac in front of the home, police found the keys to the

Cadillac and a gun used in the robbery. Inside the Pontiac was the car cover for the Cadillac and a camcorder that had been on the Cadillac's backseat. After realizing that appellant had been standing near the stolen car, they radioed for other officers to locate and detain appellant.

When the officers located appellant, he was wearing one of the stolen necklaces, had the two cufflinks in his pocket, and was carrying fifty-one dollars. Police took appellant to a nearby Shipley's donut shop, where Robertson was waiting to identify a possible suspect. On the way, appellant removed his do-rag and the necklace. When police and appellant arrived, Robertson did not hesitate to identify appellant as one of the robbers who put a gun to his head. Robertson also identified the necklace and cufflinks as his.

Appellant claimed he was not involved in the robbery. Rather, his car had broken down several miles from where police found the Cadillac and he was walking to his cousin's house. On his way, he saw a black or blue Expedition pull up to the house where police found the Cadillac and Pontiac. Several men got out of the Expedition and began to run when police entered the area. Appellant walked up to the house and found the cufflinks and necklace on the ground. He did not notice the Cadillac. He then resumed walking to his cousin's house.

A jury convicted appellant of aggravated robbery and sentenced him to eighteen years' imprisonment. He timely filed notice of appeal. We affirm.

## Analysis

### I. Sufficiency of the Evidence

#### A. Legal Sufficiency

■ Although appellant raises factual sufficiency as his first issue, we address legal sufficiency first. In a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim. App.2000). If any rational trier of fact could have found the essential elements of the offense [1] beyond a reasonable doubt, we will affirm. *Id.* The evidence is legally sufficient.

Within approximately one hour of the robbery, Robertson identified appellant as one of the robbers. Police saw appellant near the location where they recovered the stolen car, a gun used in the robbery, and items stolen from the car. Appellant was also wearing one of the stolen necklaces and had other stolen property in his pockets. While on his way for a possible identification, appellant removed the necklace and a piece of potentially identifying clothing. Robertson again identified appellant as one of the robbers who wielded a gun during the trial, while also stating that appellant wore nothing to cover up his face. Robertson was thus in an excellent position to identify appellant. Viewed in the light most favorable to the verdict, the evidence is legally sufficient.

#### B. Factual Sufficiency

---

1. The elements of aggravated robbery are met if the defendant commits robbery as defined in section 29.02 of the Texas Penal Code and he (1) causes serious bodily injury to another; (2) uses or exhibits a deadly weapon; or (3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the person is (A) 65 years of age or older; or (B) a disabled person. TEX. PEN.CODE § 29.03. A person commits robbery if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PEN.CODE § 29.02.

■ Appellant challenges the factual sufficiency of the evidence in his second issue. When conducting a factual sufficiency review, we view the evidence in a neutral light and will set the verdict aside only if the evidence is so weak as to make the verdict clearly wrong and manifestly unjust, or if the contrary evidence is so strong that the standard of proof, beyond a reasonable doubt, could not have been met. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim.App.2004). While we have reviewed the entire record and have considered all evidence presented at trial, we cannot assume the role of fact finder and substitute our judgment for that of the jury. *See Zuniga v. State*, 144 S.W.3d 477, 482 (Tex.Crim.App.2004) (stating that appellate courts are not to "find" facts or substitute their judgment for that of the jury). The evidence is factually sufficient as well.

Below, appellant presented his version of events. He also provided testimony from one other witness to corroborate part of his story. Thus, in the end, the jury had to determine whom it believed was most credible—the State's witnesses, or appellant's. The State was able to show aspects of both appellant's and his witness's testimony that might render their statements incredible or at least inconsistent. When faced with the choice of believing appellant's inconsistent explanation, or the State's witnesses, the jury was entitled to choose the version testified to by the State's witnesses. Neither was the State's evidence so weak as to make the verdict clearly wrong or manifestly unjust.

In addition to Robertson's testimony, which would be sufficient on its own and is

outlined above, the State also had physical evidence.[2] Although no usable fingerprints were recovered from the Cadillac or the gun, appellant was carrying and wearing some of the stolen property. Police found the gun, which Robertson said appellant used, in a location where appellant had been spotted shortly before police detained him. Additionally, next to where appellant had been "peeking" down the street at police, was the white Pontiac where police recovered other stolen property—property not taken from Robertson's person, but removed from the Cadillac. The evidence is factually sufficient. We overrule appellant's first and second issues.

## II. Trial Court's Comments During Voir Dire

■ In his third issue, appellant contends the following, namely the statement from the trial court, was impermissible:

[Prosecutor]: And you think [your nephew] was treated fairly [in the criminal justice system]?

. . . .

[The Court]: Let me intercede here. I hate that question, you think he was treated fairly. The criminal justice system treats everyone exactly alike. The defendant controls everything about the system. He has the right to have it presented to a grand jury or he can waive indictment and go to trial. He then has the right to an attorney of his own choice. If he doesn't have one, there's one appointed for him. He has the right to have a jury trial or a court trial. The State doesn't have any say-so in all that, the

---

2. Appellant did try to discredit Robertson's testimony by showing inconsistencies such as whether appellant's complexion was as Robertson initially described it, and whether Robertson had only later invented testimony about the names shouted out during the robbery. However, as we have explained, these are credibility determinations and facts for the jury to find.

defendant controls everything. They may not like the outcome of a case, but still the jury is the one that determines the outcome of the case. You may not like the police officer that made the arrest or he might not like the Judge, but the system treats everybody the same. And the Defendant is the one that controls what the system does. And ultimately it's people like you on the jury that controls whether someone is treated fairly or not fairly. Go ahead, Counsel.

There was no objection to this statement. However, appellant requests that we take notice of this alleged "fundamental error[ ] affecting substantial rights" pursuant to Texas Rule of Evidence 103(d). Appellant argues that the trial court's comments in effect told the jury that it was appellant's fault they were called for jury service, that appellant may not like the outcome of his case, and that the trial court wished appellant "had entered a plea of guilty and not wasted everyone's time." According to appellant, these comments impermissibly and unconstitutionally damaged the presumption of innocence in the presence of the jury and thus required no objection. As we explain below, the state of the law regarding whether or not an objection is necessary is unclear. However, regardless of whether appellant needed to object, the trial court's comments did not "bear on the presumption of innocence or vitiate the impartiality of the jury." *Jasper v. State,* 61 S.W.3d 413, 421 (Tex.Crim.App.2001).

█ Initially, we note there is no uncertainty that we may review fundamental errors without an objection. *See* Tex.R. Evid. 103(d); *Jasper,* 61 S.W.3d at 420; *Ganther v. State,* 187 S.W.3d 641, 649-650 (Tex.App.-Houston [14th Dist.] 2006, no pet.). However, trial court comments to the jury may or may not be fundamental error requiring an objection. *See generally Jasper,* 61 S.W.3d at 421 (determining that trial court's comments did not bear on the presumption of innocence or vitiate the jury's impartiality, but avoiding the question as to whether appellant needed an objection to preserve error; also noting that *Blue* is a plurality opinion and thus not binding as precedent); *Blue v. State,* 41 S.W.3d 129, 132–33 (Tex.Crim.App. 2000) (plurality) (holding that trial court's comments during *voir dire* tainted appellant's presumption of innocence in front of venire, did not require an objection and constituted fundamental error); *Ganther,* 187 S.W.3d at 649-650 (stating the rule that we may take judicial notice of fundamental error, but deciding that there was no fundamental error without directly determining whether or not trial court's comments generally require an objection); *Murchison v. State,* 93 S.W.3d 239, 262 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (deciding that there was no fundamental error in trial court's comments and thus appellant needed to object to preserve any error). These cases illustrate that while there appears to be no explicitly stated rule or approach, courts tend to determine whether or not the trial court's comments impermissibly tread upon a defendant's presumption of innocence. If so, then no objection is necessary, and there is error; if not, then there is no error regardless of whether appellant objected.

We conclude that the above comments do not violate appellant's right to the presumption of innocence. Moreover, it is our considered opinion that the trial court's comments did not negate any explanation given to the jury regarding its duty to remain impartial until it heard all of the evidence. The trial court merely commented on how the criminal justice system operates. Describing the options for indictment, appointment of counsel, and bench versus jury trial, the trial court never commented on appellant's guilt or

innocence. Unlike in *Blue,* there was no discussion about plea deals or whether the trial court wished it didn't have to preside over this particular case. Further, the trial court specifically admonished the venire that it played a significant part in determining whether the defendant received a fair trial. As such, the trial court emphasized that the individual jury members must set aside their personal opinions regarding individual actors in the criminal justice system and process—such as police officers or the Judge—and had to treat the defendant fairly and impartially when reaching a verdict. Therefore, the comments did not constitute fundamental error and we overrule appellant's third issue.

## III. Admission of Gun into Evidence

■ We turn now to appellant's fourth issue. Arguing that a gun admitted into evidence was never linked to the robbery, appellant contends the trial court erred in admitting it. Appellant cites no authority, does not address the standard of review, and misstates the record. We could dismiss this point of error simply as inadequately briefed. *See* TEX.R.APP. P. 38.1(h). However, we will briefly address appellant's argument.

As we explain below, appellant mischaracterizes the record when he argues "[t]he complaining witness indicated that he could recognize the gun but he never stated whether the gun that was actually admitted into evidence was the gun used or similar to the gun used in the offense." Also, appellant does not cite a particular rule of evidence that would mandate exclusion. We can only conclude that appellant contends the gun was irrelevant absent a link to the offense.

■ As to whether Robertson identified the gun as the one used, perhaps the State did not elicit precise language from Robertson to spell out that he not only "recog-

nize[d] the handgun most of all," but also that he recognized it as the particular gun held to his head. Regardless of the language, the State proffered the gun as the one used in the robbery, and the context of the questioning indicates that Robertson identified the gun as the one put against his head. We review the admission of evidence for an abuse of discretion. *See Martin v. State,* 173 S.W.3d 463, 467 (Tex. Crim.App.2005) (citing *Sauceda v. State,* 129 S.W.3d 116, 120 (Tex.Crim.App.2004)). The judge did not abuse his discretion. After Robertson identified the gun as the one used in the robbery, it was clearly relevant. We overrule appellant's fourth issue.

## IV. Ineffective Assistance of Counsel

■ In his final issue, appellant claims that his trial counsel was ineffective in not asking for an instruction on the lesser-included offense of robbery. Appellant's claim is tied to his contention in the previous issue that the gun was inadmissible. Appellant believes that, if the gun were not admitted, he could argue that no deadly weapon was used, and that he was entitled to the instruction on robbery. Appellant contends trial counsel was ineffective by failing to ask for the lesser-included offense. We disagree.

The Sixth Amendment to the United States Constitution guarantees the right to counsel, including the effective assistance of counsel in criminal cases. The Supreme Court has developed standards to determine whether trial counsel was ineffective in her representation, which we apply to each ineffective assistance claim. *See Rylander v. State,* 101 S.W.3d 107, 109–10 (Tex.Crim.App.2003) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). When claiming ineffective assistance of counsel, appellant must show that (1) trial counsel's perform-

ance was deficient because it fell below an objective standard of reasonableness; and (2) a probability sufficient to undermine confidence in the outcome existed that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 110. Stated differently, appellant must prove not only that his counsel's performance was not objectively reasonable, but also that the result likely would have been different had counsel not made the error she made.

On direct appeal, appellate courts generally do not look favorably upon ineffective assistance claims. *See id.* (stating that the record is generally insufficient to show whether or not trial counsel's strategy was reasonable). We have a strong presumption that trial counsel's decisions were sound trial strategy. *Id.* The more appropriate vehicle for this claim is a writ of habeas corpus—a collateral attack—because in that proceeding trial counsel may explain her actions. *Id.* at 110–11. Otherwise, the record will not provide the proof necessary to show that trial counsel was so deficient to meet the first part of the *Strickland* test. *Id.* at 110. Thus, appellants face not just the presumption that trial counsel's performance was based on sound trial strategy, but also the hurdle of an undeveloped record.

On this record, even if the gun were not admitted, appellant would not prevail on his claim. Robertson testified that more than one gun was used during the robbery. Robertson also testified that appellant placed a gun against his head. With this testimony, there is no evidence in the record that would permit a jury to rationally conclude that if appellant is guilty, he is guilty of only the lesser offense. *See Campbell v. State,* 149 S.W.3d 149, 152 (Tex.Crim.App.2004). Thus, we cannot conclude that counsel was ineffective as

appellant alleges. We overrule appellant's final issue.

## Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.