NUMBER 13-05-00386-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


CAMILO HERNANDEZ MATEZ, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 24th District Court of Jackson County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Garza


Memorandum Opinion by Chief Justice Valdez



 Appellant, Camilo Hernandez Matez, was indicted for attempted murder and
aggravated assault with a deadly weapon. Tex. Pen. Code Ann. § 19.02 (Vernon 2003),
§ 22.02 (Vernon Supp. 2006). A jury found him guilty of attempted murder and assessed
punishment at twenty years' imprisonment and a $10,000 fine. In eight issues, Matez
challenges (1) the trial court's evidentiary rulings, (2) the identification process employed
by the police, and (3) the jury charge. We affirm.

I. BACKGROUND

 On March 22, 2005 at 9:00 p.m., Laura Byrne, a convenience store employee, was
stabbed while at work. At trial, Byrne testified that Matez was a frequent patron of the store
and an occasional troublemaker. In November 2004, he was part of a drunken incident at
the store which involved the local police. Hours before the stabbing, Matez visited the
store to give Byrne jewelry. Byrne tried returning the present, but Matez refused. Later
that evening Byrne returned the jewelry to Matez's brother. Shortly before 9:00 p.m.,
Matez returned to the store, wandered to the back, and beckoned Byrne to him. Byrne
noticed that Matez appeared to be drunk because he was mumbling. When Byrne
approached, Matez pulled out a knife, pushed Byrne onto the floor, and started stabbing
her. Byrne was able to grab the knife and bend its blade. She struggled with Matez and
pushed him out of the store. 

 Brittany Olsovsky, Blake Bacak, Manuel Carrasco, and Tiffany Olsovsky were going
to the convenience store to pick up some pizzas when they witnessed, from the street,
Byrne pushing Matez out of the store. Brittany Olsovsky testified that when she entered
the store she saw Byrne sitting on the floor and bleeding. Carrasco called 911. 

 Officer Scott Burdick responded to the call. Byrne told him that her assailant was
the same individual involved in the November 2004 incident at the store, to which Officer
Burdick had also responded. He interviewed the witnesses and waited for EMS to arrive. 
The witnesses informed Officer Burdick the assailant was wearing a tan jacket and that
they could identify him if they saw him again. Bacak informed Officer Burdick that he had
seen Matez before and gave him directions to Matez's house, which was down the street
from the store. Carrasco testified that Matez had worked with his uncle and that he could
also identify him.

 Once EMS arrived, Officer Burdick proceeded to Matez's house with State Trooper
Donald Bolton and Sheriff's Deputy Bobby Doelitsch. Officer Burdick and Trooper Bolton
found the house and got permission from some men on the front porch to enter. Officer
Burdick and Trooper Bolton testified that as they were exiting the house, they noticed a tan
jacket sitting on the hood of a car in the driveway of the house and heard Deputy Doelitsch
yelling at someone to get down. The two law enforcement officers joined Deputy Doelitsch,
who had found Matez inside a shed in the back of the house. The three subdued Matez,
who resisted arrest, and took him into custody. 

 The day after the stabbing, Chief of Police Norman Glaze received a phone call
from one of Matez's neighbors informing him that she had found a knife in her driveway. 
The State offered the knife as an exhibit at trial and claimed it was used in the stabbing. 
The State also offered Byrne's blood stained bra, pants, and shirt worn on the night of the
stabbing. Matez's objections to the admission of the bra and shirt were overruled. A final
piece of forensic evidence came in the form of testimony from William J. Wagner, M.D. 
Dr. Wagner was the trauma surgeon on call the evening Byrne was stabbed. He testified
that Byrne sustained injuries to her lung, diaphragm, and liver and that as a result of the
stabbing she accumulated blood in her chest activity. He stated that whatever knife was
used to inflict Byrne's injuries had to be at least eight inches long. He further testified that
Byrne had sustained a serious bodily injury and that when shown the knife he believed it
to be a deadly weapon.

 The jury was instructed on the offenses of attempted murder and aggravated
assault. Tex. Pen. Code Ann. §§ 19.02, 22.02. The jury charge also included a special
issue asking the members to determine whether Matez used or exhibited a deadly weapon
during the commission of the felony offense if they found him guilty of attempted murder
or aggravated assault. The jury found Matez guilty of attempted murder, answered the
special issue in the affirmative, and sentenced Matez to twenty years in prison and fined
him $10,000. This appeal ensued. 

II. DISCUSSION

A. Evidentiary Challenges

 Five of Matez's issues may be properly categorized as challenges to the admission
of particular pieces of evidence. We review a trial court's admission of evidence for an
abuse of discretion. Gordon v. State, 191 S.W.3d 721, 727 (Tex. App.-Houston [14 Dist.]
2006, no pet.) (citing Martin v. State, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005)). A trial
court abuses its discretion when its decision is so clearly wrong as to lie outside the zone
within which reasonable persons might disagree. McDonald v. State, 179 S.W.3d 571, 576
(Tex. Crim. App. 2005).

1. Testimony Regarding How the Knife was a Deadly Weapon

 By his first issue, Matez contends Dr. Wagner's testimony about the knife being a
deadly weapon constituted testimony as to a legal conclusion by an unqualified expert. In
his sixth issue, Matez argues Officer Burdick was not qualified to testify about the knife
being a deadly weapon because the State had not established that he was an expert
capable of making such a determination. The trial court overruled Matez's objections to
the testimony of Dr. Wagner and Officer Burdick.

 It is well settled that the State can, without expert testimony, prove a particular knife
to be a deadly weapon by showing its size, shape and sharpness, the manner of its use
or intended use, and its capacity to produce death or serious bodily injury. Brown v. State,
716 S.W.2d 939, 946 (Tex. Crim. App. 1986). Dr. Wagner testified as to the severity of
Byrne's injuries and the fact that the knife presented by the State could have caused
Byrne's injuries. Additionally, Byrne testified about how the knife was used to stab her. 
Officer Burdick's testimony shed light on the knife's capacity to produce serious bodily
injury. Thus, we hold that the trial court did not abuse its discretion in admitting the above
testimony regarding how the knife was a deadly weapon. Matez's first and sixth issues are
overruled.

2. Probative Value of Blood-Stained Clothing

 By his second issues, Matez contends the trial court erred in admitting Byrne's bra
and shirt worn the night of the stabbing. See Tex. R. Evid. 403. The articles were cut and
blood-stained. He claims the State had already introduced evidence of the location of
Byrne's injuries through Dr. Wagner's testimony and the admission of the blood-stained
articles was solely used to inflame the jury. Valdez v. State, 776 S.W.2d 162, 169 (Tex.
Crim. App. 1989) (holding that if a verbal description of the body and scene are admissible,
the clothing worn by the victim of the offense, even if bloodstained, is admissible into
evidence, unless it is offered solely to inflame the minds of the jury); Bradford v. State, 608
S.W.2d 918, 920-21, n.1 (Tex. Crim. App. 1980). However, a victim's clothing is
admissible if it provides the jury with descriptive insight into the location and nature of the
wounds. Griffin v. State, 665 S.W.2d 762, 769 (Tex. Crim. App. 1983) (noting that a
stabbing victim's shirt was used to demonstrate the number of stab wounds, their location,
and could reflect an intent to kill).

 In the instant case, the State admitted the bra and shirt to show where the knife
went into Byrne's torso. Such evidence could orient the jury to the location and nature of
the wounds. Therefore, we hold that the trial court did not abuse its discretion in admitting
the blood-stained clothing into evidence. Matez's second issue is overruled.

3. Hearsay Objection

 By his third issue, Matez contends that Officer Burdick's testimony regarding the tan
jacket was inadmissible hearsay. In recounting his interview with the witnesses at trial,
Officer Burdick testified that they told him the assailant was wearing a tan jacket. Matez's
objection to the statement as hearsay was overruled. Tex. R. Evid. 803. 

 The admission of hearsay is nonconstitutional error and will be considered harmless
if, after examining the record as a whole, we are reasonably assured that the error did not
influence the jury verdict or had but a slight effect. Chapman v. State, 150 S.W.3d 809,
814 (Tex. App.-Houston [14th Dist.] 2004, pet. ref'd). Assuming that the statement was
hearsay and that the trial court erred in admitting it, we are convinced that its admission
had no effect on the jury's verdict. Bacak and Carrasco knew Matez prior to witnessing his
struggle with Bryne on the evening in question. Bacak gave Officer Burdick directions to
Matez's house. Although Officer Burdick and Trooper Bolton noticed a tan jacket on the
hood of a car in the driveway of the house, it was Deputy Doelitsch who had found Matez
inside a shed in the back of the house. Matez resisted arrest and had to be subdued. We
do not see how the error, if any, could have influenced the verdict, and we, therefore, hold
the error harmless. Matez's third issue is overruled.

4. Prior Bad Acts

 By his fifth issue, Matez contends the trial court erred by allowing testimony
regarding his resisting arrest. While recounting how the law enforcement officers took
Matez into custody, Officer Burdick testified that Matez resisted arrest and that Trooper
Bolton tackled Matez to the ground and needed the assistance of Officer Burdick and
Deputy Doelitsch to subdue Matez and take him into custody. Matez objected because he
claimed the statement was of an extraneous act or transaction. See Tex. R. Evid. 404(b). 
The trial court overruled his objection. 

 Evidence of other crimes, wrongs or acts is not admissible to prove the character
of a person in order to show action in conformity therewith. Id. However, the State is
generally "entitled to show circumstances surrounding an arrest," because evidence of
these circumstances, including the defendant's resistance, may also demonstrate, how
police located, pursued, and apprehended the defendant. Cantrell v. State, 731 S.W.2d
84, 92 (Tex. Crim. App. 1987) (quoting Maddox v. State, 682 S.W.2d 563, 564 (Tex. Crim.
App. 1985)). In the instant case, the State used Officer Burdick's testimony to show how
Matez was apprehended in a storage shed behind the house where one of the witnesses
said he lived. Moreover, Officer Burdick's testimony as to Matez's resisting arrest was
echoed by the testimony of Trooper Bolton, whose testimony was made without objection. 
Moreover, even if there was error, its effect was harmless given Trooper Bolton's
testimony. We overrule Matez's fifth issue.

B. Constitutional Challenge

 By his fourth issue, Matez contends that the trial court should have suppressed
evidence of his warrantless arrest because (1) the shed where he was apprehended was
curtilage, (2) non-residents of the house gave the officers permission to search the home,
and (3) there were no exigent circumstances. Tex. Code Crim. Proc. Ann. art. 14.05
(Vernon 2005). At trial, Matez objected to Officer Burdick testifying about his arrest and
orally moved to suppress his arrest and any evidence obtained after his arrest. 
Presumably, Matez meant the tan jacket that was found on the hood of a car in the
driveway. We therefore construe Matez's fourth issue as complaining of the trial court's
admission of his arrest and the tan jacket.

1. Standard of Review

 The appropriate standard for reviewing most trial court's rulings on a motion to
suppress is a bifurcated standard of review, giving almost total deference to the trial court's
determination of historical facts and reviewing de novo the court's application of the law. 
Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); Carmouche v. State, 10
S.W.3d 323, 327-28 (Tex. Crim. App. 2002); State v. Ross 32 S.W.3d 853, 856 (Tex. Crim.
App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

2. The Arrest

 The code of criminal procedure provides that "an officer making an arrest without
a warrant may not enter a residence to make the arrest unless: (1) a person who resides
in the residence consents to the entry; or (2) exigent circumstances require that the officer
making the arrest enter the residence without the consent of a resident or without a
warrant." Tex. Code Crim. Proc. Ann. art. 14.05.

 We begin with the exigent circumstances exception under which a warrantless
search can be justified. Stewart v. State, 681 S.W.2d 774, 777 (Tex. App.-Houston [14th
Dist.] 1984, pet. ref'd). "Situations creating exigent circumstances usually include factors
pointing to some danger to the officer or victims, an increased likelihood of apprehending
a suspect, or the possible destruction of evidence." McNairy v. State, 835 S.W.2d 101, 107
(Tex. Crim. App. 1991) (en banc). The burden is on the State to prove exigency. McGee
v. State, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).

 In the instant case, Dr. Wagner testified that Byrne sustained serious injuries. 
Officer Burdick examined these injuries and asked the witnesses if they could identify the
suspect. One of the witnesses pointed-out where Matez lived. Based upon the record, the
trial court could have determined that Officer Burdick made the warrantless arrest to (1)
prevent further serious injury to others given Byrne's injuries and Matez's intoxicated
incident months prior to the stabbing, (2) apprehend a suspect that had just fled the scene,
or (3) apprehend the suspect in order to recover the weapon. Assuming the shed was
curtilage and that Officer Burdick did not receive permission to search the premises from
a resident, we hold that the trial court's denial of Matez's suppression motion regarding his
arrest was within its discretion.

3. The Tan Jacket

 The restriction against intruding upon one's curtilage has its limits. For instance, it
does not prevent a police officer from approaching and knocking on the front door of a
home. Cornealius v. State, 900 S.W.2d 731, 733-34 (Tex. Crim. App. 1995). That is so
because the police have the same right as any other person to enter onto residential
property and walk up to the front door. Bower v. State, 769 S.W.2d 887, 897 (Tex. Crim.
App. 1989), overruled on other grounds, by Heitman v. State, 815 S.W.2d 681 (Tex. Crim.
App. 1991); Nored v. State, 875 S.W.2d 392, 396 (Tex. App.-Dallas 1994, pet. ref'd).
Because entry onto property is impliedly authorized, there exists no reasonable expectation
with regard to things observed by those on the pathway to the house. Bower, 769 S.W.2d
at 897. 

 In the instant case, both Officer Burdick and Trooper Bolton testified that they
discovered the tan jacket in plain view on the hood of a car parked in Matez's driveway. 
Therefore, we hold that the trial court's denial of Matez's suppression motion regarding the
tan jacket was proper. Matez's fourth issue is overruled.

C. Identification 

 By his seventh issue, Matez contends the trial should not have admitted the in-court
identification testimony of Brittany Olsovsky. Matez claims her identification of him at the
store shortly after the stabbing was tainted by an unnecessarily suggestive procedure and
gave rise to a substantial likelihood of irreparable misidentification. Brittany Olsovsky
testified that she had seen Matez struggling with Byrne in front of the store as she was
driving by. After the police apprehended Matez, they returned to the store, with Matez in
the front passenger's seat of a police car, and asked Brittany and the other witnesses if
they could identify Matez as the assailant. When Brittany identified Matez in court, Matez
objected because he claimed the identification was unreliable because the procedure
tainted it. His objection was overruled by the trial court. On cross-examination, Matez
elicited that Brittany thought she saw Matez wearing handcuffs while seated in the police
car.

 In evaluating a defendant's due process rights with regard to the admission of
identification evidence, pre-trial and in-court identifications are closely connected. "A
pre-trial identification procedure may be so suggestive and conducive to mistaken
identification that subsequent use of that identification would deny the accused due
process of law." Barley v. State, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995) (citing
Stovall v. Denno, 388 U.S. 293, 302 (1967)). We conduct a two-step analysis to determine
the admissibility of an in-court identification: (1) whether the out-of-court identification
procedure was impermissibly suggestive; and (2) whether that suggestive procedure gave
rise to a very substantial likelihood of irreparable misidentification. Id. at 33 (citing
Simmons v. United States, 390 U.S. 377, 382-84 (1968)). 

 However, even where a pre-trial identification procedure may be suggestive, "it is
the 'substantial likelihood of misidentification' . . . that works the deprivation." Webb v.
State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988) (quoting Simmons v. United States,
390 U.S. at 384). "Thus, if the totality of the circumstances reveals no substantial
likelihood of misidentification despite a suggestive pre-trial procedure, subsequent
identification testimony will be deemed 'reliable,' 'reliability [being] the linchpin in
determining the admissibility of identification testimony.'" Id. (quoting Manson v.
Brathwaite, 432 U.S. 98 (1977)). The burden is on the defendant to show by clear and
convincing evidence that an identification procedure is impermissibly suggestive or that an
in-court identification is unreliable. Barley, 906 S.W.2d at 33-34; Harris v. State, 827
S.W.2d 949, 959 (Tex. Crim. App. 1992) (citing Madden v. State, 799 S.W.2d 683, 695
(Tex. Crim. App. 1990)).

 Assuming a suggestive pre-trial identification, "identification testimony will be
admissible if the indicia of reliability outweigh the apparent corrupting effect of the
unnecessarily suggestive pre-trial occurrence." Harris v. State, 827 S.W.2d 949, 959 (Tex.
Crim. App. 1992). In making a determination regarding whether a suggestive lineup
created a substantial likelihood of misidentification, we consider several factors, including
but not limited to: (1) the witness's opportunity to observe the criminal act; (2) any
discrepancy between the pre-lineup description and the defendant's actual appearance;
(3) whether the witness identified another individual prior to the allegedly illegal lineup; (4)
prior identification of the accused by the witness or failure to identify the accused prior to
the suggestive lineup; and (5) the amount of time between the crime and the illegal lineup. 
Barley, 906 S.W.2d at 35 n.8.

 In the instant case, Brittany testified that the store was well lit and she was able to
get a good look at the assailant as they drove passed it. Since there was no lineup,
Barley's second, third, and fourth factors are inapplicable. With regard to Barley's fifth
factor, the record does not reflect the precise time that elapsed between the incident and
the identification, but it is clear that the identification took place on the evening of the
occurrence because the witnesses were still at the store. In addition to Brittany's
identification, Bacak and Carrasco testified that they had known Matez prior to the stabbing
and identified him as the assailant both at the scene and in court. 

 Based upon the entire record before us, even if the indica of reliability suggests that
Brittany's testimony was inadmissible, the identification by Bacak and Carrasco would
make such an error harmless. Tex. R. App. P. 44.2(a). Matez's seventh issue is overruled.


D. Charge Error

 By his eighth and final issue, Matez contends that the trial court should have
included in the charge an instruction requiring them to determine whether the law
enforcement officers that found Matez had consent to enter the property or whether exigent
circumstances existed before considering the testimony of Officer Burdick concerning
Matez's arrest. The trial court overruled Matez's requested instruction. 

 Other than asking us to reverse the trial court's judgment, Matez has not explained
how the trial court's error, if any, affected the judgment. Therefore, we find the issue
inadequately briefed. Tex. R. App. P. 38.1(h) (providing that a brief must contain a clear
and concise argument for the contentions made, with appropriate citations to authorities
and to the record).

III. CONCLUSION

 The judgment of the trial court is affirmed. Tex. R. App. P. 43.2(a). 

 

 

 ROGELIO VALDEZ

 Chief Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and filed 

this the 7th day of June, 2007.