

# NUMBER 13-05-00709-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**JUAN CARLOS GUERRERO, JR.,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

---

**On appeal from the 400th District Court of Fort Bend County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Chief Justice Valdez**

A jury convicted appellant Juan Carlos Guerrero of capital murder of a child. *See* TEX. PENAL CODE ANN. § 19.03(a)(8) (Vernon Supp. 2007). The trial court assessed the automatic life sentence. *Id.* § 12.31(b). Appellant asserts nine issues on appeal. We affirm.

## I. BACKGROUND

On February 7, 2003, paramedics responded to a call that a three-year old child, D.E., was unconscious and not breathing. When the paramedics arrived at the residence, they were met by appellant and Angela Lucario, the child's mother. As the paramedics initiated emergency life-saving measures, they were told by appellant that D.E. sustained his injuries by falling off the bed. The paramedics determined that D.E.'s injuries were severe enough to warrant a life-flight request. D.E. was life-flighted to Houston, Texas, where he arrived in a coma and, hours later, was pronounced dead.

Ana Lisa Lopez, M.D., medical examiner for Harris County, conducted the autopsy. Dr. Lopez found blunt force injuries to D.E.'s head and neck; multiple contusions or bruises on the head and face; deep soft tissue hemorrhage below the right and left sides of the scalp; subdural and subarachnoid hemmorage of the brain; and three bruises on his chest and abdomen. Dr. Lopez concluded that D.E. died as a result of multiple blunt force injuries that could not have been caused by his falling off a bed.

Other evidence showed that at the time of this incident, appellant and Angela were living with appellant's mother and stepfather. D.E. was Angela's son from a previous relationship. Angela testified that appellant resented the fact that D.E's father was a black man. She testified that appellant would call D.E. a "bastard" and direct various racial slurs towards him. Angela's and appellant's co-workers also testified that on various occasions appellant demonstrated racially-based animosity towards D.E. and D.E.'s father. They further testified to various incidents where appellant would angrily grab Angela either by the neck or by her hair and exclaim "wait until we get home." Their co-workers also testified that on different occasions Angela would show up to work with either rings around

2

her neck or a swollen black eye.

On the day of the incident, Angela testified that appellant was upset because he had found out that she had been writing to a black man whom she had dated in the past. Angela testified that the argument became physical when appellant punched her in the face. She stated that once she fell, she grabbed her stomach because she was pregnant with appellant's child. According to Angela, appellant stood over her and continuously punched and kicked her.

Sometime after this incident, appellant demanded that Angela give D.E. a bath. Angela asked D.E. to sit with appellant while she gathered various items for his bath, but D.E. began "whining because he did not want to go near [appellant.]" Angela testified that appellant then grabbed D.E. by his arms and stated, "Come here, you little motherfucker." As D.E. tried to fight back, appellant started to punch him in his back. Angela testified that she pleaded with appellant to stop, but he continued, and eventually began slamming D.E.'s head against a wall. D.E., according to Angela, then "passed out," and his "eyes rolled back to his head."

After a jury trial, appellant was found guilty of capital murder. The trial court assessed the automatic life sentence. This appeal ensued.

## II. CRUEL AND UNUSUAL PUNISHMENT

In his first issue, appellant asserts that the automatic life sentence mandated by section 12.31(a) of the Texas Penal Code violates the Texas and United States

3

constitutions.[1]  Specifically, appellant argues that it is "cruel and unusual" to impose a mandatory sentence of such severity, without any consideration of any mitigating factors such as, in his case, the fact that evidence exists that he may be mildly retarded.  We disagree.

We first note that appellant's "required mitigation" argument is not novel, and has been rejected by the United States Supreme Court.  S*ee Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (upholding a mandatory life without parole sentence for delivery of a controlled substance).  Furthermore, Texas courts have been consistent in upholding the constitutionality of section 12.31(a)'s automatic life sentencing provision.  *See Smith v. State*, 187 S.W.3d 186, 194-95 (Tex. App.–Fort Worth 2006, pet. ref'd); *Cinfuegos v. State*, 113 S.W.3d 481, 495-96 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd); *Barnes v. State*, 56 S.W.3d 221, 239 (Tex. App.–Fort Worth 2001, pet. ref'd); *Buhl v. State*, 960 S.W.2d 927, 935-36 (Tex. App.–Waco 1998, pet. ref'd); *Laird v. State*, 933 S.W.2d 707, 714 (Tex. App.–Houston [14th Dist.] 1996, pet. ref'd); *Prater v. State*, 903 S.W.2d 57, 59 (Tex. App.–Fort Worth 1995, no pet.).

Despite this uncontroverted authority, appellant argues that the Supreme Court's holding in *Roper v. Simmons* provides a basis to revisit this well-settled issue.  543 U.S.

---

[1] Under Texas law, an automatic life sentence is mandatory for a capital offense when the State does not seek imposition of the death penalty.  *See* TEX. PENAL CODE ANN. § 12.31(a) (Vernon 2005); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.071, § 1 (Vernon 2006).   These statutes have both been amended to require a life sentence without the possibility of parole.  *See* TEX. PENAL CODE ANN. § 12.31(a) (Vernon 2005); TEX. CODE CRIM. PROC. ANN. art. 37.071, § 1 (Vernon 2006).

However, because at the time the offense took place, "life without parole" did not exist in Texas, appellant would be eligible for parole after serving forty years. The United States Supreme Court has already rejected the argument that it is "cruel and unusual" to impose a mandatory sentence of life imprisonment without the possibility of parole.  *See Harmelin v. Michigan*, 501 U.S. 957 (1991).  Thus, a life sentence including the eligibility for parole is even less likely to offend constitutional strictures.  Indeed, the *Harmelin* majority specifically pointed out that a life sentence "cannot be compared with death."  *Id*.

551 (2005). In *Roper*, the Supreme Court determined that the Eighth and Fourteenth Amendments prohibit the imposition of the death penalty on offenders who were under the age of eighteen when their crimes were committed. *id*. at 578. Appellant argues that the same consideration that supports the abolishment of the imposition of the death penalty for those who are seventeen or younger supports the setting aside of an automatic life sentence of a "young, retarded, brain damaged person such as appellant." The Supreme Court, however, has long distinguished between the death penalty and all other penalties, holding:

> [t]he penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability. It is unique in its rejection of rehabilitation of the convict as a basic purpose of criminal justice. And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity.

*Harmelin*, 501 U.S. at 995-96 (quoting *Furman v. Georgia*, 408 U.S. 238 (1972) (Stewart, J., concurring)). The Court added that it had "drawn the line of required individualized sentencing" at death penalty cases, and saw "no basis for extending it further." *Id*. Because its holding is limited to the application of the death penalty, *Roper* is inapplicable to the present case because here, appellant received a mandatory sentence of life imprisonment. *See Cienfuegos v. State*, 113 S.W.3d 481, 495-96 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd). Thus, we are unpersuaded by appellant's request to revisit the issue.

Moreover, Texas courts have traditionally held that as long as the punishment is within the range prescribed by the legislature, the punishment is not excessive, cruel, or unusual. *See e.g.*, *Alvarez v. State*, 63 S.W.3d 578, 580 (Tex. App.–Fort Worth 2001, no

5

pet.). Here, appellant received a punishment within the statutory range. *See* TEX. PENAL CODE ANN. § 12.31(a) (Vernon Supp. 2007).

Lastly, we recognize that the *Simmons* Court affirmed the seventeen-year-old offender's sentence of life imprisonment without parole. 543 U.S. at 560. Thus, to the extent *Simmons* has any bearing on this issue at all, it suggests that life imprisonment of a seventeen-year-old capital offender does not contravene the constitutional prohibitions against cruel and usual punishment. Accordingly, we overrule appellant's first issue.

### III. FAILURE TO APPOINT AN EXPERT, INVESTIGATOR, AND CO-COUNSEL

In his second issue, appellant asserts that the trial court erred in refusing to provide funding for an expert, an investigator, and co-counsel. We disagree.

### A. Expert

Appellant first asserts that the trial court erred in refusing to provide funding for Kate Allen, Ph.D., a family sociologist. Apparently, appellant intended to use Dr. Allen to support his theory that because Angela suffered from a severe form of depression, she was solely responsible for D.E.'s death. Although the trial court initially denied appellant's motion, the record shows that after two days of trial appellant urged the trial court to reconsider, whereby the trial court agreed and granted appellant the requested funds to retain Dr. Allen or, in the alternative, Susana Rosin, Ph.D. Indeed, after closing arguments, appellant's counsel acknowledged to the trial court that he had subpoenaed Dr. Rosin to testify but decided not to call her until after the guilt/innocence stage of the trial. Thus, appellant is clearly incorrect to the extent that he contends he was denied the means to retain either Dr. Allen or Dr. Rosin. We find no error.

6

## B. Investigator

Appellant also contends the trial court erred in denying his request for an additional investigator. Appellant, however, points to no authority which holds that a trial court is constitutionally or statutorily required to appoint an investigator in non-death penalty capital murder cases. Article 26.05(d) of the code of criminal procedure entitles court-appointed counsel to reimbursement of investigative expenses. *See* TEX. CODE CRIM. PROC. ANN. art 26.05(d) (Vernon Supp. 2007). Here, appellant requested and was awarded $5,000 to retain Pamela Stites as a mitigation specialist. At various pre-trial hearings, appellant represented to the trial court that Stites had spent considerable time interviewing witnesses and obtaining background information on appellant, including juvenile, school, and medical records. At one point, appellant acknowledged to the trial court that "she has done an excellent job in doing the investigation." The record further shows that appellant requested and was awarded an additional $3,000 so that Stites could continue her "investigative assistance from the date of acceptance through the end of trial." Based on this record, we cannot agree with appellant's contention that the trial court erred in refusing to fund an additional investigator. *See Shelton v. State*, 462 S.W.2d 285, 286 (Tex. Crim. App. 1970); *Chamberlain v. State*, 453 S.W.2d 490, 494 (Tex. Crim. App. 1970).

## C. Additional Counsel

Appellant next contends that the trial court erred in denying his request for the appointment of additional counsel. Code of criminal procedure article 26.052(e) provides that:

> the presiding judge of the district court in which a capital felony case is filed
> shall appoint two attorneys, at least one of whom must be qualified under this

chapter, to represent an indigent defendant as soon as practicable after charges are filed, *unless* the state gives notice in writing that the state will not seek the death penalty.

Appellant was indicted on April 3, 2003. The State filed its notice not to seek the death penalty on September 17, 2004. Thus, approximately 17 months occurred between the time appellant was indicted and the time the State gave its written notice that it would not seek the death penalty. During that seventeen-month time period, appellant stood accused of capital murder and the State had not filed a written notice that it would not seek the death penalty, yet appellant was represented by a single attorney.

A failure to comply with article 26.052 is susceptible to a harmless error analysis. *See* TEX. R. APP. P. 44.2(b); *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000). Although appellant was not represented by two attorneys during the seventeen month period, he cannot show that the error affected his substantial rights. The record establishes that at all times the case proceeded and was tried as though the State had waived the death penalty immediately upon filing the capital charges against appellant. Moreover, appellant's trial counsel filed many motions and took other actions on his behalf. *See Kirk v. State*, 199 S.W.3d 467, 472-73 (Tex. App.–Fort Worth 2006, pet. ref'd). Thus, appellant has failed to demonstrate that the trial court's failure to appoint a second attorney has affected his substantial rights. *See id*.

Appellant's second issue is overruled.

## IV. ADMISSION OF EVIDENCE

In his next two issues, appellant claims the trial court erred in admitting evidence of extraneous acts/offenses. For each issue, appellant asserts a violation of Texas Rules of

Evidence 404(b) and 403.  *See* TEX. R. EVID. 403, 404(b).

## A.  Preserving a Complaint for Review

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  TEX. R. APP. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g).  A motion in limine will not, by itself, preserve a complaint for appellate review. *See Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Jaynes v. State*, 216 S.W.3d 839, 850 (Tex. App.–Corpus Christi 2006, no pet.).

At trial, an objection must be made as soon as the basis for the objection becomes apparent.  TEX. R. EVID. 103(a)(1); *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997); *Polk v. State*, 729 S.W.2d 749, 753 (Tex. Crim. App. 1987).  An initial objection does not, however, relieve a party's responsibility in preserving complaints for appellate review.  Texas law is clear in its requirement that a party must continuously object each time inadmissible evidence is offered, with two exceptions.  *See Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Ethington v. State*, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991).  A party need not continuously object where it obtains a running objection or requests a hearing outside the presence of the jury.  *See Martinez*, 98 S.W.3d at 193.  But one objection, without a requested running objection or a hearing outside the presence of the jury, is insufficient to preserve an issue for appellate review where further evidence on the same subject comes in without objection.  *See id.*; *Montgomery v. State*, 198 S.W.3d 67, 81 (Tex. App.–Fort Woth 2006, pet. ref'd).

9

## B. Racist Statements

In his third issue, appellant contends the trial court erred by allowing various witnesses to testify about racist statements he allegedly made in the past. An objection must be made under both rules 404(b) and 403 to preserve error regarding the admission of evidence of extraneous bad acts. *Montgomery*, 810 S.W.2d at 388. Here, appellant failed to make a rule 404(b) or a rule 403 objection to the complained of testimony. Moreover, the record reveals that appellant failed to object to the introduction of two letters written by appellant to Angela that also contained racist statements. Thus, appellant has forfeited his complaint that this evidence violated rule 404(b) and rule 403. *See* TEX. R. APP. P. 33.1(a). Appellant's third issue is overruled.

## C. Extraneous Assault Offenses

In his fourth issue, appellant complains that the trial court erred in allowing witnesses to testify that appellant had assaulted Angela during their relationship. Here, the record shows that appellant objected at various stages of the trial to the introduction of this testimony; however, as the State correctly points out, appellant's objections were sporadic, objecting to the introduction of certain physical altercations between appellant and Angela, while failing to object to others. For example, Marcus Richards, appellant's and Angela's co-worker, testified to an incident that occurred at their place of employment. According to Richards, he saw appellant chase Angela, grab her by her hair, and drag her out of the building. Appellant failed to object to the introduction of this testimony.

On the other hand, Randy Ransom, also a co-worker, testified to a similar incident that also occurred at their place of employment. Ransom testified that he saw appellant

10

grab Angela by the back of the neck and exclaim "wait until we get home." The record shows that appellant made an initial objection to this testimony, but failed to re-assert his objection as the State continued to inquire about the incident in question.

Likewise, Angela testified that appellant had previously threatened to kill her, that appellant would "beat the hell out of her," and that on the day in question, appellant punched her in the face and kicked her in the back. Again, appellant initially objected to the introduction of this evidence but failed to re-assert his objection or obtain a running objection to the State's subsequent questions regarding the same instances of physical abuse.

As noted above, after the trial court overruled appellant's objections, a request for running objections or a hearing on the issue outside the presence of the jury would have preserved this alleged error for review by this court. *See Martinez*, 98 S.W.3d at 193. The absence of these requests and lack of continuous objections to the State's subsequent inquiries about the alleged assaults, however, forfeits the issue on appeal. *See id*.; *Montgomery*, 198 S.W.3d at 81. Appellant's fourth issue is overruled.

## V. EXCLUSION OF EVIDENCE

Appellant's fifth, sixth, and seventh issues are properly categorized as challenges to the exclusion of particular pieces of evidence. We review a trial court's exclusion of evidence for an abuse of discretion. *Gordon v. State*, 191 S.W.3d 721, 727 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (citing *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005)). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *McDonald v.*

*State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

## A. Evidence of Angela's Violent Temper

In his fifth issue, appellant asserts the trial court improperly refused to admit evidence of Angela's violent temper. Appellant's argument is not entirely clear. Apparently appellant contends that he was entitled to present evidence of Angela's assaultive behavior to rebut her testimony that she used isolation techniques to control her anger. At trial, appellant advanced rule 613(b) as his theory of admissibility but, on appeal, fails to even mention that rule. Rather, appellant generally cites rule 404(b) and rule 107 as his basis for admissibility. Because appellant did not advance these theories to the trial court, he has not preserved error on appeal. *See* TEX. R. APP. P. 33.1; *State v. Bailey*, 201 S.W.3d 739, 743 (Tex. Crim. App. 2006) (an appellate court may not reverse a trial court's decision on a legal theory that was not presented to the trial court). Appellant's fifth issue is overruled.

## B. Hearsay Objection

By his sixth issue, appellant contends the trial court improperly refused to admit hearsay statements allegedly made by Angela and offered through the testimony of Rosie Martinez and Cynthia Montoya. Both witnesses testified outside the presence of the jury.

Martinez testified that the day after D.E. was killed she went to appellant's residence, and while looking through various items she came across a letter written from Angela to appellant. The letter, according to Martinez, contained a statement that Angela's mother had tried to take D.E. away from her, and that she would "rather see D.E. dead than for her mother to have him." Montoya, appellant's cousin, also testified that she once

overheard Angela make a similar comment.  The record shows that appellant sought to introduce the statement as a statement against interest under Texas Rules of Evidence 803(24) and under rule 803(3) as Angela's then existing state of mind.  *See* Tex. R. Evid. 803(3), 803(24).[2]

## 1.  Statement Against Interest

A statement against interest must be against the declarant's pecuniary interest; or subject him to civil or criminal liability; or render invalid a claim by him against another; or make the declarant an object of hatred, ridicule, or disgrace, at the time of its making such that a reasonable man in his position would not have made the statement unless he believed it to be true.  Tex. R. Evid. 803(24).

We first note that appellant failed to argue to the trial court on which of the above categories he relies.  Moreover, cases interpreting rule 803(24) have stated that corroborating circumstances must be shown that prove the trustworthiness of the statement, and the party seeking the admission has the burden to make this necessary showing.  *See Davis v. State*, 872 S.W.2d 743, 749 (Tex. Crim. App. 1994); *Manley v. State*, 28 S.W.3d 170, 175 (Tex. App. Texarkana 2000, pet. ref'd).  In order to determine if the necessary corroboration has been shown, a trial court should consider a number of

---

[2] On appeal, appellant also argues that the exclusion of these statements denied him his due process right to support his defensive theory.  In support, appellant cites *Alonzo v. State*, 67 S.W.3d 346 (Tex. App–Waco 2001, *pet. dism'd as improvidently granted*), 158 S.W.3d 515 (Tex. Crim. App. 2005), where the court held the trial court erred in excluding evidence tending to show the murder was committed by someone other than the defendant.  *Id*. at 356.  In the present case, the evidence concerns hearsay, not someone who was actually present at the time of the murder.  In *Alonzo*, the trustworthiness of the witness was also evidenced by his knowledge of details that only an eyewitness might know, while the testimony of the two witnesses in the present case are mere general statements which are not comparable to the excluded eyewitness statement in *Alonzo*.  Thus, to the extent appellant argues that he was denied his due process right to support his defensive theory, we disagree.  *See Stevens v. State*, 234 S.W.3d 748, 787-88 (Tex. App.–Fort Worth 2007, no pet.).

13

factors: (1) whether the guilt of the declarant is inconsistent with the guilt of the defendant, (2) whether the declarant was so situated that he might have committed the crime, (3) the timing of the declaration, (4) spontaneity of the declaration, (5) the relationship between the declarant and the party to whom the statement was made, and (6) the existence of independent corroborative facts. *Dewberry v. State*, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999). Appellant also failed to argue any corroborating circumstances to the trial court. The record merely shows that an objection was made, and appellant merely declared that it was a statement against interest. This mere declaration does not satisfy the requirement that corroborating circumstances must show trustworthiness, and we cannot find that the trial court abused its discretion by excluding the evidence. *Manley*, 28 S.W.3d at 175.

## 2. State of Mind

The record further indicates that appellant also sought to introduce the statement as Angela's then existing mental or emotional state of mind; a hearsay exception under rule 803(3) of the Texas Rules of Evidence. *See* TEX. R. EVID. 803(3). On appeal, however, appellant provides no substantive legal analysis, argument, or authority to support his contention. As such, his point is inadequately briefed and presents nothing for review. *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000) (explaining that arguments that fails to cite to authority in support of claim present nothing for review); *Lagrone v. State*, 942 S.W.2d 602, 614 (Tex. Crim. App. 1997) (concluding that court could not adequately evaluate issue without substantive argument or supporting authorities).

Appellant's sixth issue is overruled.

## C. Written Letters

By his seventh issue, appellant argues the trial court erred in excluding two letters written by appellant to Angela. On appeal, appellant puts forth three theories of admissibility: (1) the state of mind hearsay exception; (2) rehabilitation under rule 806 of the Texas Rules of Evidence, and (3) the rule of optional completeness. Again, in order to present a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely and specific request, objection, or motion, and that the trial court ruled on the request, objection or motion. TEX. R. APP. P. 33.1; *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Further, the error alleged on appeal must correspond to the legal theory advanced at trial. *See Bailey*, 201 S.W.3d at 743 (concluding that an appellate court may not reverse a trial court's decision on a legal theory that was not presented to the trial court). The record here shows that appellant's argument of admissibility at trial was based solely on rule 803(3), the state of mind exception. Because appellant neither advanced a rule 806 argument or optional completeness argument to the trial court, he has not properly preserved error on appeal with regard to those theories.

Moreover, at no point has appellant explained, either to the trial court or here on appeal, how the letters fall within the state of mind exception. Indeed, his argument on appeal is a single sentence, it is conclusory, and it fails to contain a citation to a single authority. Because appellant offers no analysis or argument in support of his contention, we conclude that this point is inadequately briefed. *See* TEX. R. APP. P. 38.1(h).

Appellant's seventh issue is overruled.

15

## VI. LESSER INCLUDED OFFENSE

In his eighth issue, appellant argues the trial court erred in denying his request for a jury instruction on the lesser included offense of criminally negligent homicide. Appellant claims the record contains evidence from which the jury could reasonably determine that D.E's death was caused by his negligent conduct. We disagree.

A defendant is entitled to a charge on a lesser included offense if: (1) the offense is a lesser-included offense of the alleged offense, and (2) some evidence is adduced at trial to support such an instruction. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). The first step in the lesser-included offense analysis is a question of law, which does not depend on the evidence to be produced at trial. *Id*. A determination of whether an offense is a lesser-included offense "may be, and to provide notice to the defendant must be, capable of being performed before trial by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense." *Id*. at 535-36.

"The second step in the analysis should ask whether there is evidence that supports giving the instruction to the jury." *Id*. at 536. A defendant is entitled to an instruction on a lesser-included offense if the proof for the charged offense includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense. *Id*. "In this step of the analysis, anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser-charge." *Id*. "In other words, the evidence must establish the lesser-included offense as 'a valid, rational alternative to

16

the charged offense.'" *Id*.

The court of criminal appeals has recognized that manslaughter and criminally negligent homicide are both lesser-included offenses of capital murder. *Cardenas v. State*, 30 S.W.3d 384, 392-93 (Tex. Crim. App. 2000). Therefore, we next consider whether there was evidence adduced at trial that supported giving the instruction to the jury. *See Hall*, 225 S.W.3d at 536.

A person commits the offense of criminally negligent homicide if he causes the death of an individual by criminal negligence. TEX. PENAL CODE ANN. § 19.05(a) (Vernon 2003). Like manslaughter, criminally negligent homicide requires the existence of conduct that creates a substantial and unjustifiable risk of death. *See Saunders v. State*, 913 S.W.2d 564, 572 (Tex. Crim. App. 1995). In manslaughter, however, the defendant must be aware of the risk and consciously disregard it. *Id*. In criminally negligent homicide, the jury must find that "though [the defendant] ought to have been aware of the risk, he was not." *Id*.

To support his claim that the jury should have been charged on the offense of criminally negligent homicide, appellant relies on the following: (1) Angela testified that she never thought appellant would murder D.E.; (2) appellant played with D.E. and talked to him; (3) Angela would leave D.E. with appellant when she went to work; (4) Angela testified that the assault happened very fast; (5) Angela was surprised when it happened and it appeared that appellant "just snapped;" and (6) appellant's family testified that they never saw appellant verbally or physically abuse D.E..

This evidence is not proof that appellant negligently engaged in conduct which

17

placed D.E. at risk of serious bodily injury or death. On the contrary, the above evidence indicates that appellant knew how to care for D.E. and he cared for him on a regular basis while Angela was at work. Moreover, the statement that appellant "snapped" does not amount to evidence that appellant was criminally negligent. *See Cardenas v. State*, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000) (concluding that a defendant's claim that he "lost it" does not negate the intent to kill). Furthermore, given the medical evidence detailing the manner in which D.E. died, the jury could not have found that if appellant was guilty, he was guilty of only negligently causing D.E.'s death.[3] The evidence does not entitle appellant to an instruction on criminally negligent homicide. Appellant's eighth issue is overruled.

## VII. PROSECUTORIAL MISCONDUCT

As his final issue, appellant asserts the State engaged in prosecutorial misconduct. Appellant alleges that Angela committed perjury during the trial on the merits, the prosecutor was aware of the perjured testimony, and the prosecutor did nothing to correct the false testimony.

In order to preserve error in cases of prosecutorial misconduct, the defendant must (1) make a timely and specific objection; (2) request an instruction that the jury disregard the matter improperly placed before the jury; and (3) move for a mistrial. *See Penry* v. *State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995); *Montoya v. State*, 43 S.W.3d 568, 572 (Tex. App.–Waco 2001, no pet.). Regarding specificity, a party should "let the trial judge

---

[3] Moreover, criminally negligent homicide is a lesser included offense of both capital murder and manslaughter. Because the jury was instructed on – and rejected – the standard of manslaughter, any error in not charging the jury on criminally negligent homicide was harmless. *See Saunders v. State*, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995).

know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the court is in proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

Appellant did not object in the trial court on the grounds of prosecutorial misconduct, nor did he receive an adverse ruling on such an objection. Appellant did not seek an instruction that the jury disregard any false testimony that may have been admitted, nor did appellant seek a mistrial based on any alleged prosecutorial misconduct. Thus, appellant failed to preserve any error for appeal. *See* TEX. R. APP. P. 33.1; *Penry*, 903 S.W.2d at 764.

Appellants ninth issue is overruled.

### VIII.  CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgment.


*/s/ ROGELIO VALDEZ*
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and filed
this the 13th day of March, 2008.